FILED'10 DEC 2 13:12 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | | |
|---|---|---|
| JAMES NICHOLAS JACKS, | ) | |
| | ) | |
| Plaintiff, | ) | CV 09-6243-CL |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

CLARKE, Magistrate Judge:

Plaintiff James N. Jacks appeals the Commissioner's decision denying his applications

for disability insurance benefits and supplemental security income payments under Titles II and

XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and

1383(c). The Commissioner's decision should be affirmed.

1 - REPORT AND RECOMMENDATION

## PROCEDURAL POSTURE

Plaintiff filed concurrent applications for Social Security Disability (SSD) and Supplemental Security Income (SSI) disability benefits on July 22, 2004, alleging disability beginning September 1, 2000.  Admin. R. 41, 87-89.  His applications were denied initially on December 2, 2004, and again upon reconsideration on July 19, 2005.  Id. at 41, 54-64.  Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on June 14, 2007.  Id. at 41, 383-391.  Plaintiff, represented by Counsel, appeared and testified, as did Tracy Menear, his longtime girlfriend, and a vocational expert.  Id. at 41.  On December 24, 2008, the ALJ rendered an adverse decision.  Id. at 38-49.  On July 10, 2009, the Appeals Council denied plaintiff's request for review.  Id. at 6-37.

## BACKGROUND

Jacks alleged disability beginning September 1, 2000, due to mental impairments and back pain.  Admin. R. 97-98.  He satisfied the insured status requirements of the Social Security Act through September 30, 2004.  Id. at 84, 104.  He must show that he was disabled within the meaning of the Act on or before that date to prevail on his Title II claim for disability insurance benefits.  42 U.S.C. § 423(a)(1)(A).  *See* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  There is no insured status prerequisite for his Title XVI claim.  42 U.S.C. § 1382(a).  Supplemental security income payments cannot be made retroactively, however.  20 CFR §§ 416.203, 416.501; Social Security Ruling ("SSR") 83-20, 1983 WL 31249.  As a result, the relevant period for Jacks's Title XVI claim commenced in July 2004, when he filed his application.  Admin. R. 91, 104.

//

2 - REPORT AND RECOMMENDATION

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)). In this context, the term "substantial evidence" means more than a mere scintilla, but less than a preponderance--it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Id.; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible of more than one rational interpretation, the court must defer to the Commissioner's conclusion. Moncada, 60 F.2d at 523.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential process is used to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1995), as amended (Apr. 9, 1996).

At the first step, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the inquiry moves to the second step.

At the second step, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If claimant does not have such a severe impairment, he is deemed not disabled. Id. If the claimant has a severe impairment or combination thereof, the inquiry moves to the third step.

At the third step, the Commissioner determines whether the claimant's severe impairment meets or equals a "listed" impairment in the regulation. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii); 20 C.F.R., Part 404, Subpart P, Appendix 1. If so, disability is conclusively presumed and benefits are awarded. Lester, 81 F.3d at 828 n. 5; see 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the Commissioner must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC") before proceeding beyond step three of the disability analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, and should reflect the claimant's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week despite limitations imposed by his impairments. SSR 96-8p. The RFC assessment must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical and nonmedical facts.  Id.  The RFC is based on all
relevant evidence in the case record, including the treating physician's medical opinions about
what an individual can still do despite impairments.  Id.

At the fourth step, the Commissioner uses this information to determine whether the
claimant can still perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv);
416.920(a)(4)(iv).  If the claimant has sufficient "residual functional capacity" to perform his past
work, he is not disabled and the claim is denied.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the
claimant meets this burden, a prima facie case of disability is established and the inquiry
advances to step five.

At the fifth and final step, the burden shifts to the Commissioner to establish that the
claimant is capable of performing other work that exists in the national economy.  20 C.F.R. §§
404.1520(a)(4)(v), 416.920(a)(4)(v); Yuckert, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094,
1099 (9th Cir. 1999).  If the Commissioner fails to meet this burden, the claimant is deemed
disabled.  20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966.

## THE ALJ'S FINDINGS

The administrative law judge ("ALJ") applied the five-step sequential disability
determination process described in 20 C.F.R. §§ 404.1520 and 416.920.  Bowen v. Yuckert, 482
U.S. 137, 140 (1987).

In the present case, the ALJ found that plaintiff had not engaged in substantial gainful
activity since September 1, 2000 (the alleged onset date of disability), and September 30, 2004
(the date the ALJ determined Plaintiff was last insured for Disability Insurance Benefits).
Admin. R. 43.

At step two, the ALJ found Jacks's ability to work limited by the severe combined effects of degenerative disk disease of the lumbar spine, bipolar disorder, and post traumatic stress disorder ("PTSD"). Admin. R. 44.

At step three, the ALJ found that Jacks does not have an impairment or combination of impairments that meets or medically equals listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. Specifically, the ALJ found that there was no indication that Jacks's degenerative disc disease results in compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Id. The ALJ also found that Jacks's mental disorders do not singly or in combination meet or medically equal listings 12.04 or 12.06, because neither the "paragraph B" or "paragraph C" criteria are satisfied. Id.

The ALJ found that Jacks had the residual functional capacity to perform medium work, subject to two limitations: he should avoid concentrated exposure to hazards such as heights or moving machinery, and is restricted from direct contact with the public. Admin. R. 45. The ALJ's conclusion is supported by a narrative discussion describing how the evidence supports his assessment of plaintiff's physical and mental limitations, and cites specific medical and non-medical facts. Id. at 45-47.

At step four, the ALJ found that, of the eight jobs included in Jacks's past relevant work, Jacks could only perform his past relevant work as a food products sorter. Id. at 47-48.

At step five, the ALJ found Jacks's functional limitations did not preclude the activities required to perform other jobs in the national economy. The ALJ concluded that Jacks had failed

to establish he was disabled within the meaning of the Social Security Act during the relevant

time for his claims. Id. at 48-49.

## DISCUSSION

The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g);

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Jacks contends the ALJ reached this RFC assessment after improperly discrediting his

subjective statements, the statements of the lay witness, the psychological report of Mark

Wagener, Ph.D., and the findings and conclusions of reviewing psychologist Paul Rethinger,

Ph.D. Jacks contends these errors led the ALJ to achieve an RFC assessment that did not

accurately reflect all of his functional limitations. He argues the ALJ elicited testimony from the

VE with improper assumptions based on the erroneous RFC assessment which, in turn,

undermined the ALJ's conclusion that Jacks remains capable of working.

## I. THE ALJ PROPERLY ASSESSED PLAINTIFF'S RFC

Jacks contends the Commissioner's decision is flawed because the ALJ erred in assessing

his residual functional capacity ("RFC"). The RFC assessment describes the work-related

activities a claimant can do on a sustained, regular, and continuing basis, despite the functional

limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p,

1996 WL 374184. An ALJ must base the RFC assessment on all the evidence in the case record

and consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 *5.

The ALJ found Jacks retained the RFC to engage in work requiring medium exertion, limited to

simple, routine tasks and instructions, without direct contact with the general public or

concentrated exposure to hazards such as heights and moving machinery.  Admin. R. 44.  After

careful consideration of the arguments and the record, the court finds that the ALJ's assessment

of Jacks's RFC is proper, for the following reasons.

### A.    Credibility Determination

In his disability report, Jacks alleged he became disabled on September 1, 2000, because

of auditory hallucinations, paranoid thoughts, and back pain.  Admin. R. 97-98.  In

questionnaires submitted to support his claim, Jacks alleged he did not go anywhere or do

anything on a daily basis, required a daily nap, slept all day and stayed awake all night, had

nightmares, could not stand or walk, could sit no more than one hour at a time before needing

rest, and could only occasionally bend, lift 10 pounds, or reach.  Id.  He alleged he could be up

for no more than an hour and could not independently engage in any activity, including personal

grooming and hygiene.  Id. at 128-31, 135-45.

At the hearing, Jacks testified that he did not do anything except watch television.  Id. at

401.  He said he did not go outside the home or shop and did not drive because his license was

suspended.  Id. at 403-04.  He did not read because of poor comprehension, could not do

arithmetic because numbers appeared backwards to him, and could not make change accurately.

Id. at 397.  Jacks said he felt he could not work because he could not concentrate on tasks, lost

track of what he was doing, and had trouble dealing with the public.  Id. at 399, 408.

The ALJ found that Jacks's medically determinable impairments could reasonably be

expected to produce some of the symptoms he alleged, but that his statements about the intensity,

persistence, and limiting effects of the symptoms were not credible.  Id. at 47.  Specifically, the

ALJ accepted that Jacks had degenerative changes in the lumbar spine, but found him capable of

work requiring medium exertion. Id. at 44. This effectively discredited Jacks's allegations that he can lift no more than 10 pounds occasionally, sit only for one hour at a time, and that he is incapable of any activity involving standing or walking. The ALJ accepted Jacks's diagnoses of bipolar disorder and PTSD, and found they limited him to simple, routine tasks and instructions, and made it unreasonable to expect him to work in direct contact with the public. Id. at 44. This effectively discredited Jacks's allegations that his limitations in concentration, staying on task, and interacting with the general public were so severe as to render him incapable of any work.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. Smolen v. Chater, 80 F3d 1273, 1281-82 (9th Cir 1996); Cotton v. Bowen, 799 F2d 1403, 1407-08 (9th Cir 1986). The ALJ conceded that Jacks met this threshold making a credibility determination necessary. Admin. R. 45.

An ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008); Smolen, 80 F.3d at 1283. In assessing credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work history, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186 *5. An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Tommasetti v. Astrue, 553 F.3d 1035, 1039 (9th Cir. 2008), *quoting* Thomas v. Barnhart, 278

F.3d 947, 958 (9th Cir. 2002).

The ALJ considered the available evidence relating to these factors and reached conclusions that flow logically from that evidence. The ALJ pointed out that the objective medical findings did not support extreme limitations in exertion. The only orthopedic evaluation in the record was on November 4, 2004, when Jacks was admittedly completely asymptomatic. Although x-ray studies showed moderate degenerative disk disease at one vertebral joint in the lumbar region of the spine, Jacks demonstrated normal gait, the ability to sit easily and change positions without discomfort, full range of motion of the lumbar spine, negative straight leg raise tests, normal motor strength, muscle bulk, sensory examination, and range of motion in his joints. In short, the objective medical evidence included no abnormal findings of a functional nature and Jacks admitted he was taking no pain medications and had no symptoms. Admin. R. 281-84.

The ALJ considered the treatment history for Jacks's back pain. Other than the consultative evaluation just described, which was ordered to evaluate his disability claim and not for treatment, Jacks did not seek or obtain an evaluation or treatment for his alleged back pain. Despite alleging back pain so severe that he could not bend, stand, walk, lift over 10 pounds even occasionally, or sit more than one hour, Jacks did not seek any form of treatment to relieve that pain. Admin. R. 97-98, 399. This unexplained failure to seek treatment casts doubt on the sincerity of Jacks's assertions of debilitating back pain. Flaten v. Sec'y of Health & Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).

Jacks argues that his failure to seek treatment should be excused because he lacked

medical insurance and could not afford treatment. This is not persuasive, however, because Jacks did seek treatment for other less debilitating ailments during the time he lacked insurance. For example, he obtained treatment for dental pain, earaches, bruised ribs after falling from a cliff, right ankle pain after a tractor accident, and chest pain associated with coughing and bronchitis. Admin. R. 237-43, 245-47, 252-53, 259, 266-69, 275-76. His ability to obtain treatment for relatively minor ailments undermines the credibility of his assertion that lack of insurance prevented him from treatment for debilitating back pain. The ALJ could reasonably infer that if Jacks's back pain had been as severe as he claimed, he would have sought relief as he did for the other relatively less intrusive episodes of pain.

Similarly, the record is very limited regarding objective findings supporting mental impairments. At about the alleged onset of disability, Jacks sought treatment from Linn County Mental Health services. His symptoms included sleep disturbance and feeling down and hopeless, but he denied any history of hallucinations. His symptoms supported only a single episode of depression and a global assessment of functioning ("GAF") of 62. Id. at 361. A GAF of 62 describes a patient with mild symptoms or functional difficulties, but who generally functions pretty well. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV") 30-32.

In March 2001, Gale Smolen, M.D., performed a psychiatric assessment. In her mental status examination, Dr. Smolen made no abnormal findings. Based on Jacks's subjective history, Dr. Smolen diagnosed recurrent depression and alcohol dependence with a GAF of 50. Admin. R. 362-64. A GAF of 50 indicates a patient experiencing serious symptoms or serious impairment of function. DSM-IV at 30-32.

11 - REPORT AND RECOMMENDATION

In September 2003, Dr. Smolen performed a consultative psychodiagnostic examination to evaluate Jacks's claim of disability based on mental impairments. Dr. Smolen's objective findings were generally benign. Jacks appeared appropriate, his speech and eye contact were normal, his thought processes were logical and goal directed, his affect was full range, he was alert and oriented, his memory, judgment, and insight were intact, and he demonstrated the ability to follow 3-step instructions. Admin. R. 377-78. Jacks gave a subjective history which included numerous symptoms he had never mentioned before. For the first time, Jacks reported childhood sexual abuse, fear of the telephone, avoidance of social interactions, auditory hallucinations, and flashbacks. Based on this subjective history, Dr. Smolen added PTSD to her diagnostic impression. Id. at 379.

In December 2003, Jacks was transported to Linn County Mental Health by law enforcement after being jailed and demonstrating "out of control behavior." Id. at 356. Curtis Miller, Ph.D., performed the intake interview and contacted an unidentified "caregiver" at the telephone number Jacks provided. This person reported that Jacks had a long term history of schizophrenia and possible bipolar disorder, with current symptoms of insomnia and auditory hallucinations. Notably, the record does not reflect such a long term history of mental illness. Dr. Miller observed that Jacks was fully oriented, but agitated and noncompliant with jail requirements. Based on the history given by the purported caregiver, Dr. Miller diagnosed a psychotic disorder. He observed that Jacks appeared to be an alcoholic. Id. The record includes no other psychological findings before Jacks's insured status expired in September 2004.

In November 2004, Dr. Wagener performed a psychodiagonistic examination to evaluate Jacks's disability claim. In his mental status examination, Dr. Wagener noted the following

objective findings: Jacks had poor hygiene; appeared to walk normally; was fully oriented; demonstrated his memory was intact; had limited ability to maintain concentration; had poor ability to verbalize abstractions; spoke of hearing voices but demonstrated no objective sign of hallucinations during the session; reported paranoid thoughts and a compulsive need to defend himself; appeared initially anxious but calmed and demonstrated the ability to relate interpersonally. Dr. Wagener diagnosed a rapidly cycling bipolar disorder and PTSD with a history of alcohol dependence and substance abuse. The only objective findings of a functional nature were a limited ability to maintain concentration and verbalize abstractions. Id. at 285-90.

In April 2008, Jacks sought medication for PTSD, and reported new allegations of past trauma. A Psychiatric Mental Health Nurse Practitioner obtained normal findings in a mental status examination, except that Jacks appeared mildly depressed with a constricted affect. Id. at 20-23. After starting medications, Jacks reported improvement in his sleep, focus, and attention. Id. at 18-19. Jacks saw Dr. Smolen on two other occasions for medication management, but she did not report objective findings. Id. at 15, 16.

The ALJ also considered Jacks's psychological treatment history. Jacks sought treatment during 2000 and 2001, but was inconsistent in attendance and was only seen in counseling a couple of times. On discharge from treatment, Jacks appeared to be getting relief from prescribed medications. Id. at 373. Jacks was seen in consultative evaluations for his disability claim, but did not require psychological treatment between the jail episode in December 2003 and another referral from jail in September 2007. Id. at 33, 356. In April 2008, he restarted psychological medications and was seen for medication management afterwards. When a claimant makes subjective statements claiming disabling symptoms but does not seek treatment

or follow a recommended course of treatment to relieve the symptoms, an ALJ may reasonably find the subjective statements unjustified or exaggerated. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001). Jacks's treatment history shows that he did not consistently require treatment or comply with prescribed therapy. The ALJ could reasonably infer that the long periods without treatment reflected that Jacks's symptoms were not as severe as suggested in his subjective statements. He could infer from reports of improvement when Jacks complied with medication that his symptoms were susceptible to control. Impairments that are controlled by medication are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). In short, the treatment history supports an adverse inference as to the credibility of Jacks's subjective assertion of disabling psychological symptoms.

The ALJ also considered Jacks's daily activities. Despite his allegations of physical limitations so severe that he could not lift 10 pounds, stand, walk, sit for one hour, or independently perform personal care, Jacks reportedly rode a bicycle for transportation, mowed the lawn and did other yard work, and worked on cars; he sought treatment for injuries suffered while engaging in physical activities such as pulling fence posts, falling from a cliff, climbing a tree, and driving a tractor. Admin. R. 21, 245-46, 287, 377, 402, 403, 405.

The ALJ also noted inconsistencies in Jacks's subjective reports suggesting he was not entirely candid. For example, at different times Jacks variously reported past traumatic events to different providers as childhood sexual abuse by an aunt, childhood sexual abuse by an uncle, seeing a friend stabbed to death, seeing a friend killed in a drive-by shooting, seeing a man run over by a tank, and being a victim of friendly fire while in the military. Id. at 20, 286, 356, 375.

Jacks also inconsistently described the extent of his substance abuse. He reported to examining sources that he was abstinent from street drugs and alcohol, admitting only a remote history of substance abuse. Id. at 22, 287, 335, 361-62. Elsewhere Jacks admitted regular current consumption of beer and whiskey and daily use of marijuana to calm his nerves. Id. at 186, 189. Jacks claimed a long history of schizophrenia and auditory hallucinations, but the record does not reflect a diagnosis, treatment, or objective observations to support this claim, and Jacks denied any history of hallucinations initially. Id. at 98, 144, 288, 362. An ALJ can properly draw adverse inferences as to the credibility of the claimant from such inconsistencies in his statements. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ's reasoning is sufficient to show that the ALJ did not arbitrarily disregard Jacks's subjective statements. The ALJ considered all the available evidence relating to the proper factors for assessing credibility. Taken as a whole, his explanation is clear and convincing and his factual findings are supported by substantial evidence. Accordingly, the ALJ's credibility determination should not be disturbed.

**B.    Lay Witness Statements**

Jacks contends the ALJ improperly discounted the statements of Tracy Menear, his longtime girlfriend. An ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding the claimant's condition. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). If the

15 - REPORT AND RECOMMENDATION

ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. Id.; Bayliss v. Barnhart, 427 F.2d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Ms. Menear submitted two written questionnaires and testified at the administrative hearing. Ms. Menear's statements were essentially identical to Jacks's regarding his inability to independently bathe, dress, drive, or engage in everyday household tasks without assistance. She believed Jacks's mental health was progressively worsening. She indicated Jacks sometimes became argumentative, had episodes of ranting and raving, and experienced panic attacks with suicidal thinking about three times a month. Admin. R. 189-99, 409-21.

The ALJ considered Ms. Menear's statements and Jacks's subjective statements together. Id. at 46. Ms. Menear's statements are susceptible to the same reasoning the ALJ used to discount Jacks's statements. Her statements suggesting exertional limitations rendering Jacks incapable of personal care and simple everyday tasks are contradicted by the medical evidence showing he has no physical limitations of a functional nature, his sporadic treatment history, and his reported activities. Her statements suggesting a debilitating psychological condition are contradicted by the findings of examining psychologists and his sporadic treatment history.

The ALJ also pointed to inconsistencies in the statements suggesting that they are not entirely reliable. Ms. Menear indicated in her written statements that Jacks gets along well with his family but not with strangers. Id. at 190. At the same time, in another written submission, she said Jacks had difficulty getting along with family members. Id. at 195. She testified that Jacks frequently did not get along with her or his son. Id. at 411.

Ms. Menear also gave contradictory statements about Jacks's substance abuse. Ms.

Menear participated when Dr. Wagener interviewed Jacks in November 2004. At that time she said Jacks had not used alcohol for four years and had stopped using illicit drugs in 1990. Id. at 287. In March 2005, Ms. Menear submitted a written statement indicating Jacks regularly consumed moderate amounts of beer and whiskey and used marijuana daily. Id. at 189.

The ALJ's decision makes clear that he did not arbitrarily discount Ms. Menear's statements without comment. He considered her statements and found them unreliable for germane reasons flowing logically from substantial evidence in the record as a whole. Nguyen, 100 F.3d at 1467; Bayliss, 427 F.2d at 1218; Lewis, 236 F.3d at 511. In conclusion, the ALJ's evaluation of the lay witness statements should be upheld.

### C.    Medical Source Statements

Jacks contends the ALJ improperly rejected Dr. Wagener's report from November 2004. As described previously, Dr. Wagener performed a consultative psychodiagnostic examination and diagnosed a rapidly cycling bipolar disorder and PTSD. Admin. R. 289. Dr. Wagener observed that Jacks was fully oriented and his memory was intact. Jacks performed serial counting tests at a slow pace which Dr. Wagener interpreted as an indication that his ability to concentrate was limited to an unspecified degree. Jacks's response latencies in general, however, were within normal limits. Jacks reported paranoid thoughts and both he and Ms. Menear described a compulsive need to defend himself. Dr. Wagener noted Jacks was poor at verbalizing abstractions, but did not indicate what consequence this limitation might have in vocational terms. Dr. Wagener noted that Jacks was initially anxious, but this resolved during the session, and Jacks demonstrated the ability to relate interpersonally. Id. at 288.

The ALJ gave significant weight to Dr. Wagener's report, adopting his diagnostic

impression and finding bipolar disorder and PTSD to be severe impairments. The ALJ's RFC assessment included significant limitations on the mental work activities Jacks could perform. Specifically, the ALJ concluded Jacks was limited to simple, routine tasks and could not work in direct contact with the general public. Id. at 45.

Jacks correctly points out that an ALJ must explain with clear and convincing reasons why he has chosen to reject a treating or examining physician's opinion that is not contradicted by another physician. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Thomas v. Barnhart, 278 F3d 947, 956-57 (9th Cir 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Here, however, the ALJ did not expressly reject Dr. Wagener's report or reach conclusions that contradicted Dr. Wagener's findings. Indeed, Dr. Wagener did not make any findings regarding specific work-related functional limitations.

The ALJ's conclusion that Jacks could perform simple, routine tasks and follow simple, routine instructions, despite having a limitation of unspecified severity in the ability to concentrate, rationally flows from the examinations in which Jacks demonstrated the ability to follow three-step instructions. The ALJ's conclusion that Jacks could work if restricted from direct contact with the public rationally flows from the evidence that, despite defensiveness and an unspecified degree of paranoid thoughts, Jacks routinely appeared friendly and cooperative in examination sessions, and demonstrated the ability to relate interpersonally. The ALJ's conclusion that the functional limitations in Dr. Wagener's report would be accommodated by limiting Jacks to simple, routine tasks and instructions and work that does not require direct contact with the general public is a reasonable interpretation of the record as a whole. Because the ALJ did not reject Dr. Wagener's findings, he was not required to articulate a clear and

convincing explanation for doing so.

Even if the evidence could rationally be interpreted differently, in a manner more favorable to Jacks, the court must uphold the ALJ's rational conclusions.  Where the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Batson, 359 F.3d at 1193.

Jacks also contends the ALJ improperly failed to mention the opinion of Dr. Rethinger. Dr. Rethinger reviewed the entire record and prepared a Mental Residual Functional Capacity ("MRFC") worksheet, indicating moderate limitations in various functional categories.  Admin. R. 316-20.  Jacks contends these limitations show that he cannot get along with coworkers or supervisors.  In his narrative summary, Dr. Rethinger clarified and elaborated on the limitations indicated on the MRFC worksheet.  Dr. Rethinger opined that Jacks retained the ability to perform simple, repetitive work involving simple tasks and instructions.  He indicated that Jacks should not work directly with the public or near hazards.  He noted evidence that suggested Jacks would work best alone, and other evidence that suggested he could interact appropriately. Specifically, Dr. Rethinger indicated that Jacks reported irritability and discomfort around others and that he preferred to work alone, but that he interacted appropriately with examiners.  Dr. Rethinger did not reach a conclusion about Jacks's ability to get along with coworkers and supervisors; he simply pointed out the conflicting evidence.  Id. at 318.

An ALJ is not bound by the findings of reviewing consultants such as Dr. Rethinger, but may not ignore their opinions and must explain the weight given to the opinions in the decision. SSR 96-6p 1996 WL 374180.  Here, the ALJ did not ignore Dr. Rethinger's opinion.  The RFC assessment he reached incorporated the findings in Dr. Rethinger's narrative summary.  He

expressly stated that he reached his RFC "in accordance with the opinions of the state agency consultants." Admin. R. 47.   Accordingly, the ALJ's evaluation of Dr. Rethinger's MRFC should be upheld.

## II.  THE ALJ PROPERLY ELICITED TESTIMONY FROM THE VOCATIONAL EXPERT

Jacks contends the ALJ's RFC assessment should have included additional limitations and restrictions based on his subjective statements, the statements of Ms. Menear, and the medical source statements of Drs. Wagener and Rethinger, and that by failing to include these limitations the hypothetical posed to the vocational expert is necessarily invalid and does not correctly represent Jacks's ability to work.

The Social Security Act places the initial burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant. 42 USC §§ 405(g), 423(d)(5); Roberts v. Shalala, 66 F3d 179, 182 (9th Cir 1995).  An ALJ is not required to incorporate limitations based on evidence that he properly discounted.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

As discussed above, the ALJ considered all of the evidence presented by the plaintiff, and incorporated the limitations he found supported by the record as a whole in the hypothetical posed to the vocational expert.  On the basis of the evidence presented and the vocational expert's testimony, the ALJ could properly determine that Jacks failed to prove that he was disabled within the meaning of the Social Security Act during the time that is relevant to his claims.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's

decision that Jacks did not prove disability and is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence.  It is recommended that the Commissioner's decision be affirmed, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.  *Objections to this Report and Recommendation, if any, are due by December 20, 2010.  If objections are filed, any response to the objections are due by January 10, 2011.  See* Federal Rules of Civil Procedure 72, 6.

DATED this ___ day of December, 2010

Mark D. Clarke
United States Magistrate Judge

21 - REPORT AND RECOMMENDATION